**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AMERICAN HOME ASSURANCE**
**COMPANY and NATIONAL UNION FIRE**
**INSURANCE COMPANY OF**
**PITTSBURGH, PA,**

        **Plaintiffs,**

v.    Case No. 8:11-cv-1278-T-30AEP

**ARROW TERMINALS, INC., EVERETTE**
**AVENUE TOWNHOMES, LLC, KEITH A.**
**WILLETT, et al.,**

        **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Summary Judgment (Dkt. 90), Defendant Everette Avenue Townhomes, LLC's Motion for Summary Judgment (Dkt. 91), Defendant Arrow Terminals, Inc.'s Motion for Summary Judgment (Dkt. 93), Defendant Keith Willett's Notice of Joinder in Arrow Terminals, Inc.'s Motion (Dkt. 94), and Defendant Keith Willett's Notice of Joinder in Everett Avenue Townhomes, LLC's Motion (Dkt. 103). The Court, having reviewed the motions, responses, record evidence, and being otherwise advised in the premises, concludes that Plaintiffs' motion should be denied and Defendants' motions should be granted on the issue of Plaintiffs' duty to defend.

## INTRODUCTION

In this insurance case, the parties' summary judgment motions argue the issue of whether Plaintiffs have a duty to defend the insured, Defendant Arrow Terminals, Inc. ("Arrow"). Plaintiffs argue that the subject insurance policies' pollution and health hazard exclusions bar coverage and, thus, they do not have a duty to defend Arrow in the underlying actions; Defendants argue that these exclusions are inapplicable to the coverage claims as alleged in the underlying complaints against Arrow. The Court agrees with Defendants. The Court concludes that the pollution and health hazard exclusions do not bar coverage. Thus, as a matter of law, Plaintiffs have a duty to defend Arrow and this case will be stayed on the issue of Plaintiffs' indemnity obligation pending the resolution of the underlying actions.

## BACKGROUND

### I. The Underlying Complaints

Arrow operates marine storage warehouse facilities at the Port of Manatee. In the course of its business, Arrow acquired and sold imported Chinese drywall ("CDW") that was stored at its warehouse. Arrow's involvement in the distribution of allegedly defective CDW to third parties is the basis for the underlying actions filed against Arrow. The underlying suits filed against Arrow at issue in this declaratory judgment action include the suits filed by: Defendant Everette Avenue Townhomes, LLC ("Everette"), Defendant Keith A. Willett ("Willett"), and Defendants William and Stacy Peek (the "Peeks") (collectively the "Underlying Complaints").

The Underlying Complaints seek recovery from Arrow for damages caused by the defective CDW. Defendant Everette's complaint alleges that it developed 32, two-story, split plan townhome units in an 11 building complex located in Hillsborough County, Florida. Everette seeks damages related to the physical injury and destruction to tangible property within the units and the loss of use of tangible property, including, among other things, damage to HVAC units, wiring, appliances, and metal building components. Everette repaired the townhomes at considerable expense. Everette's damages include damages associated with relocating homeowners to temporary housing facilities.

Willett's complaint and the Peeks' complaint seek similar property damages related to their Tampa residences. They also seek damages associated with their inability to use and reside in their homes. Unlike the Everette action, which does not seek damages associated with bodily injury, Willett and the Peeks allege that the defective CDW caused bodily injuries.

Notably, the Underlying Complaints do not allege that the CDW caused property damage from the release of pollutants into the *outside* environment. Rather, the Underlying Complaints allege property damage from CDW confined to the *interior* of the townhomes and residences.

Plaintiffs are providing Arrow with a defense in the underlying actions subject to a reservation of rights letter.

## II.     Applicable Policy Provisions

Plaintiff American Home Assurance Company ("American Home") issued policy no. E060206 to Arrow, for the policy period April 1, 2006 to April 1, 2007, to the named insured "Arrow Terminals Inc." (the "2006-2007 American Home Policy"). The 2006-2007 American Home Policy was renewed as policy no. E060207, for the policy period April 1, 2007 to April 1, 2008 (the "2007-2008 American Home Policy"). Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issued policy no. E060208 to Arrow via a renewal of the 2007-2008 American Home Policy, for the policy period April 1, 2008 to April 1, 2009 (the "National Union Policy").

With respect to the issues raised in the parties' summary judgment motions, all of the policies provide identical coverage. The policies state, in pertinent part:

> 1. <u>Coverage A - Bodily Injury Liability    Coverage B - Property Damage Liability</u>
>
> The company will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of
>
> > A. bodily injury, or
> >
> > B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Assured seeking damages on account of such bodily injury or property damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Dkt. 42-4, p. 31 of 68).

"Property damage" in the policies is defined to mean:

> (1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

(Dkt. 42-4, p. 30 of 68). "Bodily injury" is defined in the polices to mean "Bodily Injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." (Dkt. 42-4, p. 28 of 68). "Occurrence" is defined in the policies to mean "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Assured." (Dkt. 42-4, p. 30 of 68).

The polices also include a "Broad Form Liability Endorsement," which states that the insurer:

> will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the Named Assured's business, within the policy territory . . .

(Dkt. 42-4, p. 36-37 of 68).

"Personal injury" is defined as "injury arising out of one or more of the following offenses committed during the policy period: . . . 2. wrongful entry or eviction or other invasion of the right of private occupancy; . . .." (Dkt. 42-4, p. 38 of 68).

The policies also contain an endorsement relied upon by Plaintiffs entitled "POLLUTION LIMITATION ENDORSEMENT" (SUDDEN AND ACCIDENTAL BASIS), which provides:

> Such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants or pollutants *into or upon land, the atmosphere, or any watercourse or body of water.*

(Dkt. 42-4, p. 56 of 68) (emphasis added).

Plaintiffs also rely on the "Health Hazard Exclusion", which provides:

> Notwithstanding anything to the contrary contained in this policy, no coverage is granted by this policy for any claim or expense (including but not limited to defense cost) arising out of the following exclusion.
> . . .
>
> It is further agreed that this policy shall not apply to any liability for Bodily Injury or Personal Injury and/or Property Damage made by or on behalf of any person or persons directly or indirectly <u>on account of continuous, intermittent or repeated exposures to, ingestion, inhalation, or absorption of</u>, any substances, materials, products, wastes or emissions, noise or environmental disturbance where the Assured is or may be liable for any reason including, but not limited to, as a result of the manufacture, production, extraction, sale, handling, utilization, distribution, disposal or creation by or on behalf of the Assured of such substances, materials, products, wastes or emissions, noise or environmental disturbance.
> For purpose of this clause, the term "Personal Injury" shall mean bodily injury or insult (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, disability, detention, humiliation or wrongful eviction.

(Dkt. 42-4, p. 26 of 68) (underline in original).

Plaintiffs brought this coverage action against Arrow, Everette, Willet, and the Peeks, seeking a declaration that there is no coverage under the subject policies and Plaintiffs have no duty to defend or indemnify Arrow in connection with the Underlying Complaints. Plaintiffs argue in their summary judgment motion that the applicability of the pollution and health hazard exclusions warrant summary judgment in their favor. Defendants contend that these exclusions do not bar coverage. The facts are not disputed and this issue is purely an issue of law.

## **SUMMARY JUDGMENT STANDARD OF REVIEW**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the

nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

### DISCUSSION

**I.    Duty to Defend**

Under Florida law, an insurer's duty to defend is determined by the facts and legal theories alleged in the pleadings against the insured. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.,* 52 F.3d 1575, 1580 (11th Cir. 1995) (citations omitted). "[I]f the complaint alleges

facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So. 2d 810, 813-14 (Fla. 1st DCA 1985) (citations omitted). "'When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation.'" *Acosta, Inc. v. Nat'l Union Fire Ins. Co.,* 39 So. 3d 565, 574 (Fla. 1st DCA 2010) (quoting *Castillo v. State Farm Fla. Ins. Co.,* 971 So. 2d 820, 824 (Fla. 3d DCA 2007)). "If the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." *Baron Oil,* 470 So. 2d at 814 (citations omitted).

Unlike the duty to defend, the duty to indemnify should not be decided until the conclusion of the underlying actions. *See Northern Assurance Co. of America v. Custom Docks by Seamaster, Inc.*, 2011 WL 117046, at *2 (M.D. Fla. Jan. 13, 2011).

## II.   Applicable Insurance Principles

Insurance contracts are construed in accordance with "the plain language of the polic[y] as bargained for by the parties." *See Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 33 (Fla. 2000) (quoting *Prudential Prop. & Cas. Ins. Co. v. Swindal,* 622 So. 2d 467, 470 (Fla. 1993)) (alteration in original). However, if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage,

the policy is considered ambiguous. *See Anderson,* 756 So. 2d at 34; *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 165 (Fla. 2003). Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured. *See Anderson,* 756 So. 2d at 34; *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So. 2d 1072, 1076 (Fla. 1998); *Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So. 2d 1135, 1138 (Fla. 1998). Further, ambiguous "exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Anderson,* 756 So. 2d at 34; *see also Demshar v. AAACon Auto Transport, Inc.,* 337 So. 2d 963, 965 (Fla. 1976) (noting: "Exclusionary clauses in liability insurance policies are always strictly construed.").

### III.   The Pollution Exclusion

Plaintiffs contend that the subject policies' pollution exclusion bars coverage. As set forth above, the pollution exclusion precludes any claim arising out of the "discharge, dispersal, release or escape of . . . irritants, contaminants or pollutants *into or upon land, the atmosphere, or any watercourse or body of water*." (Dkt. 42-4, p. 56 of 68) (emphasis added). Defendants counter that the pollution exclusion does not bar coverage because the Underlying Complaints do not allege that the CDW caused property damage from the release of pollutants into the outside environment, i.e., into land, the atmosphere, or any watercourse or body of water. Rather, the Underlying Complaints allege property damage from CDW confined to the interior of the townhomes and residences. The Court agrees with Defendants.

Plaintiffs' argument is flawed because Plaintiffs predominantly rely on cases that are inapplicable to the instant case. Specifically, most of Plaintiffs' cases interpreted materially

different pollution exclusions; those exclusions did not contain the "into or upon land, the atmosphere, or any watercourse or body of water" language, which is present in the subject insurance policies. Thus, those cases are not persuasive.

Although there is no Florida case directly on point, the Court agrees with cases from other jurisdictions that hold that the "into or upon land, the atmosphere, or any water course or body of water" language limits the pollution exclusion to outdoor environmental contamination. *See Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 656 A.2d 142, 145-46 (Pa. Super. Ct. 1995) (interpreting the term "atmosphere" to mean outside air and holding that damages resulting from carbon monoxide released into the inside air of a building were not precluded by the pollution exclusion); *Board of Regents of the University of Minnesota v. Royal Ins. Co.*, 517 N.W.2d 888, 892-93 (Minn. 1994) (interpreting the term "atmosphere" in a pollution exclusion as being limited to the discharge of pollutants into the external environment); *Essex Ins. Co. v. Avondale Mills, Inc.*, 639 So. 2d 1339, 1341-42 (Ala. 1994) (concluding that the term "atmosphere" contained in a pollution exclusion referred to the broad natural environment, not internal environs of a building); *Continental Casualty Co. v. Rapid-American Corp.*, 609 N.E.2d 506, 513 (N.Y. 1993) (holding that the pollution exclusion required disbursal on land, into the atmosphere, or a body of water, and did not preclude coverage for claims arising from asbestos confined to a building's interior); *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 933 (Ill. 1991) ("We do not understand 'the atmosphere' to mean the multiple diverse environs or surroundings of individual buildings").

Importantly, even assuming the Court concluded that the pollution exclusion is ambiguous as applied to the facts alleged in the Underlying Complaints, the Court must construe that ambiguity in favor of coverage. *See Anderson*, 756 So. 2d at 34 (noting that ambiguous policy provisions are interpreted strictly against the drafter with exclusionary clauses construed even more strictly against the insurer). Therefore, Plaintiffs cannot satisfy their burden of proving that the allegations of the Underlying Complaints are solely and entirely within the pollution exclusion.

Accordingly, the pollution exclusion does not apply to defeat Plaintiffs' duty to defend Arrow in the Underlying Complaints as a matter of law.

## IV. Health Hazard Exclusion

Plaintiffs also rely on the subject policies' health hazard exclusion. Defendants counter that the health hazard exclusion has no application to the property damage claims, the heart of the underlying actions. The Court agrees. The plain language of the health hazard exclusion makes it clear that it has potential application only to claims arising out of the human ingestion of hazardous substances. Accordingly, the exclusion has no application to the property damage claims asserted in the Underlying Complaints.

Notably, the few reported cases involving a health hazard exclusion involve claims by people for injuries to their health as a result of ingestion of a hazardous substance. *See Rickie A. Cobb v. Sipco Services & Marine, Inc.*, 1997 WL 369633 (E.D. La. June 27, 1997) (concluding that the health hazard exclusion precluded coverage for respiratory injuries allegedly resulting from a worker's inhalation of toxic paint fumes); *see also Monticello Ins. Co. v. Baecher*, 477 S.E.2d 490 (Va. 1996).

Also, to the extent that the health hazard exclusion's reference to "Property Damage" renders it ambiguous, said ambiguity must be construed in favor of Arrow, the insured. Therefore, Plaintiffs cannot satisfy their burden of proving that the allegations of the Underlying Complaints are solely and entirely within the health hazard exclusion.

Accordingly, the health hazard exclusion does not apply to defeat Plaintiffs' duty to defend Arrow in the Underlying Complaints as a matter of law.

It is therefore ORDERED AND ADJUDGED that, to the extent stated herein:

1. Plaintiffs' Motion for Summary Judgment (Dkt. 90) is DENIED.

2. Defendant Everette Avenue Townhomes, LLC's Motion for Summary Judgment (Dkt. 91) and Defendant Arrow Terminals, Inc.'s Motion for Summary Judgment (Dkt. 93) are GRANTED.

3. The Court holds, as a matter of law, that Plaintiffs have a duty to defend Arrow Terminals, Inc. in the Underlying Complaints.

4. This case is stayed pending the resolution of the Underlying Complaints.

5. The Clerk of Court is directed to administratively close this case.

6. The parties may file a joint motion to reopen this case at the conclusion of the Underlying Complaints.

**DONE** and **ORDERED** in Tampa, Florida on May 8, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-1278.msjs.frm